IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>JOSE GUERRA MALDONADO,<br><br>Defendant/Movant. | Cause No. CR 02-91-BLG-SPW<br>CV 17-73-BLG-SPW<br><br><br>ORDER DISMISSING § 2255<br>MOTION AND DENYING<br>CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Maldonado's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Maldonado is currently serving a sentence of life in prison for federal drug and firearms offenses. *See* Judgment (Doc. 209) at 2–3.

On May 15, 2017, the Court of Appeals authorized Maldonado to file a second or successive § 2255 motion in this Court. The United States answered on February 16, 2018. Maldonado replied on March 27, 2018. On August 16, 2019, the Court required the parties to file supplemental briefs (Doc. 276). They complied on January 31, 2020 (Docs. 283, 284).

## I. Background

On July 19, 2002, a grand jury indicted Maldonado and four co-defendants on one count of conspiring to possess more than 500 grams of methamphetamine

1

with intent to distribute it, a violation of 21 U.S.C. § 846 (Count 1); one count of

possessing about a pound of methamphetamine within 1000 feet of a playground

and with intent to distribute it, a violation of 21 U.S.C. §§ 841(a)(1) and 860

(Count 2); two counts of distributing about three-quarters of a pound of

methamphetamine, once on June 20 and once on July 10, 2002, violations of 21

U.S.C. § 841(a)(1) (Counts 3 and 5); one count of being an illegal alien in

possession of a firearm, a violation of 18 U.S.C. § 922(g)(5) (Count 6); and one

count of being a felon in possession of a firearm, a violation of 18 U.S.C. §

922(g)(1) (Count 7).  Count 4 of the Indictment accused a co-defendant of

possessing about two ounces of methamphetamine on July 2, 2002, with intent to

distribute it.  Maldonado was not named in that count, but the indictment alleged a

*Pinkerton* theory, *see Pinkerton v. United States*, 328 U.S. 640 (1946), so the jury

would consider Count 4 as to Maldonado as well.

On January 7, 2003, the United States filed an Information under 21 U.S.C.

§ 851, alleging that Maldonado had two prior felony drug convictions from

California.  Due to the drug and quantities alleged in Counts 1 and 5, filing of the

Information subjected Maldonado to a mandatory sentence of life in prison.  *See* 21

U.S.C. §§ 841(b)(1)(A)(viii), 851(a).

On February 7, 2003, Maldonado pled guilty to the firearms offenses,

Counts 6 and 7 of the Indictment.  Trial of Counts 1 through 5 commenced on

2

February 10, 2003. After hearing four days of testimony, the jury convicted

Maldonado on Counts 1 and 5, acquitted him on Counts 3 and 4, and, on Count 2,

found him guilty of the lesser included offense of possession of 50 grams or more

of a substance containing methamphetamine with intent to distribute it. *See*

Verdict (Doc. 121).

On July 23, 2003, Maldonado was sentenced to life in prison on Counts 1, 2,

and 5, plus 120 months on the firearms charges, Counts 6 and 7, with all terms

running concurrently. *See* Minutes (Doc. 208); Judgment (Doc. 209) at 1–3.

Maldonado appealed. On November 22, 2004, the Court of Appeals

affirmed his conviction and sentence. *See* Mem. (Doc. 226) at 8–9, *United States*

*v. Maldonado*, No. 03-30346 (9th Cir. Nov. 22, 2004) (unpublished mem. disp.).

On December 6, 2005, Maldonado filed a motion to vacate, set aside, or

correct the sentence under 28 U.S.C. § 2255 (Doc. 240). The motion and a

certificate of appealability were denied on September 25, 2006. The Court of

Appeals denied a certificate of appealability on June 1, 2007 (*see* Doc. 245).

On March 28, 2016, Maldonado moved the Court to appoint new counsel to

investigate whether Assistant United States Attorney James Seykora withheld

material exculpatory or impeaching information. *See* Mot. for Counsel (Docs. 247,

247-1). New counsel was appointed and applied to the Court of Appeals for leave

to file a second § 2255 motion. As noted above, the application was granted, and

3

Maldonado's second § 2255 motion is currently pending before the Court.

## II.  Merits

Maldonado asserts one claim.  He alleges that AUSA Seykora withheld exculpatory or impeaching information that was material to the jury's verdicts against him, in violation of *Giglio v. United States*, 405 U.S. 150 (1972).  The parties cooperated to determine what information, if any, Seykora should have disclosed but did not.  Only one previously undisclosed item emerged.  The question is whether that evidence could amount to "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."  28 U.S.C. §§ 2255(h)(1), 2244(b)(4).

### A.  The Newly Discovered Evidence

The evidence at issue is an *ex parte* motion Seykora filed, asking the trial judge to review the motion and attached exhibits *in camera* and decide whether the information presented should be disclosed to defense counsel.  Neither the motion nor its contents were discussed in any of the five volumes of the trial transcript.  Nor does the Court's record contain any order ruling on the motion.

Seykora signed the motion on Friday, February 7, 2003.  The clerk filed it at 7:44 a.m. on Monday, February 10, the first day of trial.  Seykora represented that

4

a trial witness, Dawn Hoots, had "a potential to assist in many investigations if her

identity as a confidential informant is not revealed."

> The United States respectfully request[s] that this court review this
> matter in camera to determine if her[] status as a CI needs to be
> provided to defense counsel at trial.  If the court believes that defense
> should be notified the United States would like to further provide
> additional information if necessary.

*Ex Parte* Mot. (Doc. 115) at 2.

Seykora advised that, since January 14, 2003, agents had given Hoots $60:

$20 to allow her to obtain a phone so she could call case agents, $20 as payment

for introducing an agent to a suspect, and $20 to reimburse her for hiring a

babysitter while she was making the introduction.  Seykora also represented that

federal agents arranged for her to receive a notice to appear instead of being

arrested on two outstanding warrants from city court.  *See id.*

Seykora attached two documents to the motion.  One was a "witness

summary."  This is a document the Court requires each party to give to the clerk

and opposing parties when the party calls a witness.  *See* Trial Scheduling Order

(Doc. 43) at 3 ¶ 8.  It summarizes the witness's anticipated testimony and identifies

any exhibits the party expects to introduce through the witness.  Seykora's

summary described Hoots's expected testimony:

> Dawn Hoots will testify that she resided at an apartment complex at
> 1225 Lake Elmo Road.  In the summer of 2002 Hector Cisneros (CI)
> asked to use her apartment with some other people while she was at

5

work.   When she returned from work, she found a Hispanic male outside of her apartment who asked her to give him a ride to a house at 811 N. 25th.  When she returned to her home, she found a Wal Mart bag on the counter with methamphetamine residue in it.  She also found an aluminum cooking tin and baking soda on the counter.

Dawn Hoots believes the man she gave a ride to was Jose Maldonado.

Witness Summary (Doc. 115 at 3).[1]

The second document attached to the *ex parte* motion was a four-page summary of Hoots's interview, conducted a week before trial by Montana DCI Agent Magnuson and U.S. Border Patrol Agent Suek.  The summary appeared on a "G-166C," a form used by the Immigration and Naturalization Service.[2]  Portions of the report were redacted.  Among other things, the report describes what appears to be the same incident described in the witness summary.

In the relevant paragraph, the report indicates Hoots described the man who asked her for a ride only as "a Hispanic Male who couldn't speak English very well."  *See* INS Report of Interview ("ROI") (Doc. 115 at 8).  The ROI also states

---

[1] These summaries are not created for the record.  They merely facilitate trial by alerting the Court to the nature of the upcoming testimony, allowing the clerk to gather the relevant exhibits, and giving opposing counsel an opportunity to collect their own relevant materials.  Other than the summary of Hoots's testimony, attached as an exhibit to the *ex parte* motion, no other witness summaries were filed.

[2] Shortly after trial, the Department of Homeland Security was created.  INS functions were assumed by U.S. Citizenship and Immigration Services (USCIS), U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP).

that Hoots "recalls meeting someone by the name of Jose that Hector brought to her apartment."

The agents showed Hoots "a photo of Jose Guerra-Maldonado." The ROI does not say Hoots said, "That's Jose," or "That's the man I gave a ride to." It says Hoots "recognized the photo but was unsure of who the person is." ROI (Doc. 115 at 8). At trial, however, Hoots identified Maldonado as the person to whom she gave a ride. *See* 4 Trial Tr. (Doc. 194) at 845:24–848:9. Maldonado's counsel did not ask Hoots about her failure to identify Maldonado in a photograph one week earlier. *See id.* at 848:20–849:2.

The ROI also stated that Hoots recognized photographs of two of Maldonado's co-defendants, Francisco Gonzalez-Betancourt and Pedro Carrasco, but she did not know their names and could not say under what circumstances she had met them. She did not recognize a photograph of another co-defendant, Cenobio Gonzalez-Betancourt. *See* ROI (Doc. 115 at 8). Her testimony at trial suggested she had seen two people—the person she identified at trial as Maldonado and one other person—in Hector's company. But neither of the other defense attorneys took the opportunity to point out that she failed to identify photographs of their clients. The fact that none of the defense lawyers asked Hoots

7

about her failure to identify photographs of their clients suggests they did not know the contents of the ROI.[3]

The text of the *ex parte* motion asked only whether Seykora could withhold the fact that Hoots was working as a confidential informant and the relatively low-level favors agents had done for her, not whether he could withhold the ROI. Nothing in the record of the case indicates whether the trial judge ruled on the *ex parte* motion, what the ruling was, whether Seykora was advised of it, or whether he complied with it. Nothing indicates what Seykora had in mind when he wrote the peculiar last sentence—"If the court believes that defense should be notified the United States would like to further provide additional information if necessary." Nothing indicates whether Seykora actually discussed additional information with the judge, or, if so, whether it persuaded the judge to change his ruling. Due to the last-minute nature of the filing, it is even possible the judge did not see the motion.

In view of the other occasions on which AUSA Seykora withheld obviously relevant exculpatory or impeaching information about cooperating witnesses, and in the absence of any indication here that he properly disclosed it, the Court will presume AUSA Seykora failed to disclose anything about Hoots. He withheld not

---

[3] Of course, the best evidence of disclosure or nondisclosure would be a log, but apparently Seykora never made one.

only the fact that she had already received $60 from the agents and stood to obtain

more money if she continued working for them as a confidential informant, but

also her failure to identify the photograph of Maldonado as either the man Hector

once brought to her apartment or the man to whom she gave a ride.

## B. Materiality

Perhaps understandably, the United States' assessment of the materiality of

Hoots's testimony leaves one wondering why the prosecutor called her to testify:

> [A]t most, she puts the defendant in possession of methamphetamine
> residue and using methamphetamine by smoking it.  The defendant's
> own admissions put him in possession of large amounts of
> methamphetamine.  In terms of her testimony demonstrating the
> defendant knowing Hector Cisneros, the defendant himself admitted
> he knew Cisneros and knew Cisneros to deal in methamphetamine.
> The defendant's own admissions [in a prearrest interview] make Ms.
> Hoots's testimony as to those details immaterial.
>      Additionally, none of her testimony related to the defendant
> conspiring with others to sell methamphetamine.  Ms. Hoots testified
> that she did not see the defendant with drugs and did not have the
> impression he had drugs.  This testimony was entirely favorable to the
> defendant.  Aside from smoking methamphetamine and her driving
> him to a location that had a plastic bag with methamphetamine residue
> Ms. Hoots offered nothing to incriminate the defendant.

U.S. Br. (Doc. 283) at 13–14.  Maldonado's "admissions" did not quite "put him in

possession of large amounts of methamphetamine."  They did not establish that he

intended to exert any control over it.  *See* 5 Trial Tr. (Doc. 195) at 1124:19–21.

It is true that Hoots did not do a lot.  But Seykora probably had a reason for

calling her to testify.  Her testimony that Maldonado was present at her home,

9

alone, where she allowed Cisneros to cut and package methamphetamine, connected him with the business of drug trafficking in a way that merely knowing methamphetamine was present at the Rimview Inn did not. "Hoots was the only substantive eyewitness placing Maldonado at the scene of drug dealing and drug cutting who was presented by the Government at trial as not having received any benefits from the Government in the form of either payments, immunity, or both." Pet'r Br. (Doc. 284) at 9–10. The facts to which Hoots testified tended to corroborate what Cisneros said about Maldonado. And his testimony needed corroboration, because there were lots of reasons to question his credibility.

Even so, because the current motion is Maldonado's second, the law compels him to show more than materiality (assuming, arguendo, that he meets that standard). To obtain relief, he must show "by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1). Taking all the evidence presented at trial plus the newly discovered impeachment information about Hoots, giving no deference to the verdict, and indulging no assumption that the jury found any particular witness to be credible, a reasonable juror might have retained reasonable doubt. But the Court cannot say that *no* reasonable juror would have convicted Maldonado on Count 1, or Count 2, or Count 5.

The newly discovered evidence, viewed together with all the relevant evidence, does not suggest that no reasonable factfinder would have convicted Maldonado. *See* 28 U.S.C. § 2255(h)(1). The Court must dismiss his claim for failure to meet the required standard. *See id.* § 2244(b)(4).

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A reasonable jurist could not find that the newly discovered evidence would preclude *all* reasonable jurors from convicting Maldonado on Count 1, on Count 2, or on Count 5. A COA is not warranted.

Accordingly, IT IS ORDERED:

11

1.  Maldonado's second motion under 28 U.S.C. § 2255 (Doc. 262) is

DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 2244(b)(4).

2.  A certificate of appealability is DENIED.  The clerk shall immediately

process the appeal if Maldonado files a notice of appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 17-

73-BLG-SPW are terminated and shall close the civil file by entering

judgment in favor of the United States and against Maldonado.

DATED this 29th day of May, 2020.

Susan P. Watters
United States District Court